UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLEOTIS ANGLIN,

    Plaintiff,

vs.                                                        Case No. 8:07-cv-46-T-27EAJ

CITY OF AUBURNDALE, FLORIDA,
a municipality,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Dispositive Motion for Summary Judgment (Dkt. 42), to which Plaintiff has responded in partial opposition (Dkt. 50). Upon consideration, Defendant's motion is GRANTED IN PART and DENIED IN PART.

*Background*

Plaintiff Cleotis Anglin worked for Defendant City of Auburndale between October 28, 2003 and March 9, 2006. (Sec. Am. Compl., Dkt. 25, ¶¶ 12, 23). In 2005, Plaintiff applied for the newly created position of Public Safety Aide in Defendant's Police Department. Plaintiff alleges that two less-qualified white applicants were ultimately selected for the position. Plaintiff brings the instant action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1983 for alleged disparate treatment based on his race and for retaliation. As Plaintiff has stipulated to summary judgment on the retaliation claims, those facts are not addressed herein.

Plaintiff was originally hired as a sanitation worker in Defendant's Public Works Department. (Pl. Dep. I at 17). In early 2005, Plaintiff transferred to a service worker position with

1

the Parks and Recreation Department. (*Id.* at 19). Plaintiff's duties included taking care of softball fields, mowing, tree trimming, and upkeep of a lakeside park. (*Id.* at 20-21).

In mid-2005, Plaintiff applied for the position of Public Safety Aide ("PSA") with the Police Department. (*Id.* at 18). On or about June 7, 2005, Plaintiff was notified that he had not been selected for the position. (*Id.* at 61-62). Defendant instead selected John Emch, a white male. (Dkt. 50, Exh. A at 5). When Emch resigned from the position in or around August 2005, Defendant hired another white male, Patrick O'Neal, from the original applicant pool. (Longo Dep. at 37). Plaintiff contends that both Emch and O'Neal were lacking in law enforcement experience, which he possessed.

Dean Longo, the Chief of Police and a white male, created the position of PSA and interviewed and evaluated all applicants for the position. (Longo Aff. ¶¶ 1-3, 7).[1] The "Recruitment Bulletin" described the major function of the PSA position as "providing services to the community that are non-confrontational, non-emergency nature and that do not require the services of a certified law enforcement officer." (Longo Aff., Exh. A). The essential duties included conducting citizen fingerprinting, handling animal complaints, providing assistance to disabled vehicles, and giving presentations to citizen groups. (*Id.*) In addition, the Recruitment Bulletin specified that "[a]n essential and important element of this position is attitude which includes the following: Interacting positively and cooperating with co-workers, responding politely to customers, working as a team member, functioning under intense time pressure and responding in a positive manner to supervision." (*Id.*)

---

[1] The final decision was made by the City Manager, Robert Green, based on Longo's recommendation. (Longo Dep. at 11). Green did not take part in the hiring or evaluation process, which was left exclusively to Longo. (Green Dep. at 10-11; Longo Dep. at 17).

Longo contends that the most important qualification for the job was the applicant's ability to interact with the public. (Longo Aff., ¶ 6; Longo Dep. at 25-28). Although the PSA "Job Description" stated that "[p]reference may be given to applicants that have prior law enforcement experience or who have completed basic police standards training" (Longo Aff., Exh. B at 2), Longo testified that he did not consider prior law enforcement experience to be an advantage because he was not hiring a police officer (Longo Dep. at 25). Longo avers that any law enforcement skills that the PSA needed, such as fingerprinting and basic radio procedures, could be taught in a brief amount of time. (Longo Aff. ¶ 6).

Longo interviewed Plaintiff and avers that it "was my impression, based on my interview of Mr. Anglin, that he had an aggressive attitude and a tendency toward being confrontational in nature. . . . It was my impression that Mr. Anglin perceived the Public Safety Aide job as an opportunity to serve as a quasi-law enforcement officer and that he would bring a hard-edged, police officer's attitude to the job, which was exactly what I did not want in the position." (Longo Aff., ¶ 8). Longo also avers that he did not select a white female applicant for the PSA position based on similar concerns, even though she had more "police" qualifications and training than Plaintiff. (Longo Aff., ¶ 9).

In addition to disputing the applicants' qualifications, Plaintiff contends that Longo's explanation is pretextual because, as discussed in more detail below, Defendant failed to afford Plaintiff the requisite preference as an existing City employee under the Defendant's Promotion Policy and Procedures, Defendant failed to give Plaintiff preference for his prior law enforcement experience as stated in the PSA Job Description, Longo was unable to substantiate his determination that Plaintiff was aggressive with any specific facts, and the vast majority of the employees in the

3

Police Department were white. Upon consideration, the Court finds that there is sufficient evidence of pretext and Defendant is not entitled to summary judgment on the disparate treatment claims.

## *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

*Discussion*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).[2] Discrimination may be proven through either direct or circumstantial evidence. Direct evidence is "evidence, which if believed, proves existence of fact in issue without inference or presumption." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n. 6 (11th Cir.1987); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189-90 (11th Cir. 1997). In the instant case, Plaintiff has not alleged any direct evidence of discrimination.

Claims of discrimination based on circumstantial evidence are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). First, a plaintiff must establish a prima facie case of discrimination. *Id.*; *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). If the plaintiff sustains this burden, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* The presumption of discrimination is then rebutted, and "the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Wilson*, 376 F.3d at 1087. The plaintiff must meet the defendant's proffered reason head on and rebut it. *Id.* at 1088.

### A. Disparate Treatment

1. *Prima facie case*

In Counts I and II, Plaintiff claims that he suffered disparate treatment based on Defendant's

---

[2] Plaintiff brings parallel claims pursuant to Title VII and 42 U.S.C. § 1983. Because these claims have the same elements and burdens of proof, they are analyzed concurrently. *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995).

5

decision not to hire him for the PSA position. To establish a prima facie case of disparate treatment in a failure to hire context, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified and applied for the position at issue; (3) he was rejected; and (4) the position was filled by a person outside the protected class. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 973 (11th Cir. 2008). In the instant motion, Defendant argues that Plaintiff was not qualified for the position because Longo was seeking to hire someone who was personable.

The Eleventh Circuit has adopted the position of a majority of circuits that "subjective evaluations play no part in the plaintiff's prima facie case. Rather, they are properly articulated as part of the employer's burden to produce a legitimate race-neutral basis for its decision." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005); *Hill v. Seaboard Coast Line R.R. Co.*, 885 F.2d 804, 809 (11th Cir. 1989) (noting that the Eleventh Circuit had not required proof of subjective qualifications when the employer utilizes wholly subjective standards or where the subjective qualification was akin to likability). Defendant's arguments regarding Plaintiff's personality are therefore properly evaluated as part of the pretext inquiry. *Id.*

Thus, in order to demonstrate that he was qualified for the PSA position, Plaintiff need only show that he satisfied Defendant's objective qualifications. *Vessels*, 408 F.3d at 768-69. Defendant does not dispute that Plaintiff met the objective qualifications listed in the Job Description, including age, good moral character, possession of a high school diploma, valid driver's license and home telephone number, and satisfactory background investigation. (Longo Aff., Exh. B). The Court accordingly finds that Plaintiff has presented a prima facie case of disparate treatment.

2. *Non-discriminatory reason*

Defendant maintains that Plaintiff was not selected for the PSA position because, in Longo's

subjective judgment, Plaintiff did not have the right personality. Specifically, Longo determined that Plaintiff had an aggressive communication style and demeanor and had a potentional to be confrontational. (Longo Dep. at 29-32). It is well-established that subjective reasons for employment decisions "can be just as valid as objective reasons," especially in service-oriented jobs, such as the PSA position at issue. *Chapman v. AI Transport*, 229 F.3d 1012, 1033 (11th Cir. 2000). As Plaintiff notes, however, a subjective reason is legally sufficient only "if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Id.* at 1034.[3]

The Court finds, consistent with other courts that have considered this issue, that Plaintiff's purported aggressive and confrontational personality is, itself, a sufficiently specific non-discriminatory reason for Plaintiff's non-selection. *See, e.g., Chambers v. Metro. Prop. and Cas. Ins. Co.*, 351 F.3d 848, 857 (8th Cir. 2003); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008); *see also Dockery v. Nicholson*, 170 F. App'x 63, 66 (11th Cir. 2006). Plaintiff's argument that Longo had difficulty in defining an objective basis for his determination that Plaintiff had an aggressive personality is more appropriately evaluated in connection with the pretext inquiry, below.

3. *Pretext*

Plaintiff maintains that Defendant's stated reason for his non-selection is a mere pretext for

---

[3] For instance, in *Chapman*, the court noted that:
[I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or "because he had his nose pierced," or "because his fingernails were dirty," or "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion-the applicant's bad (in the employer's view) appearance.
*Chapman*, 229 F.3d at 1034.

an unlawful discriminatory animus. Pretext may be proven "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 (11th Cir. 2000). To survive summary judgment, Plaintiff must produce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). The ultimate burden of proving pretext by a preponderance of the evidence is on the plaintiff, *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001), and it is the court's responsibility "for drawing the lines on what evidence is sufficient to create an issue on pretext." *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002).

Plaintiff argues that there is sufficient evidence of pretext because he was better qualified for the PSA position that both Emch and O'Neal, the successful white applicants. When relative qualifications are at issue, "[courts] do not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denney v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001). Generally, "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004); *see also Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (declining to address proper standard for evaluating relative qualifications, but approving quoted language in *Cooper*). Importantly, however, when the disparity in qualifications is not the only basis for arguing pretext, as here, the disparity need not be so dramatic to support an inference of pretext. *See Vessels*, 408 F.3d at 772.

Plaintiff avers that he was better qualified based on his prior work experience and education. Specifically, Plaintiff served in the United States Navy for ten years, including five years as a security guard, and worked for a correctional service corporation as a physical education coach for six years. (Dkt. 50, Exhs. H, I). In addition, Plaintiff had taken law enforcement and computer courses. (Dkt. 50, Exh. H; Pl. Aff. ¶ 7). Plaintiff argues that his computer knowledge was particularly relevant, as "[k]nowledge of modern office practices, procedures, and equipment" was one of the job requirements. (Pl. Aff. ¶ 7; Longo Aff., Exh. A). Plaintiff also avers that nothing occurred during the interview to support Longo's determination that he was confrontational, forceful, or aggressive. (Pl. Aff. ¶ 8).

By contrast, Emch, who was Longo's first choice, had worked as a form grinder in a factory for thirty-five years and briefly worked as a school bus driver and photo technician. (Dkt. 50, Exh. J). Longo testified that he selected Emch at the best applicant because he was "relatively low key, personable, able to communicate effectively." (Longo Dep. at 27). As Plaintiff notes, however, Emch resigned the position after struggling to use the radio and learning "new concepts." (Longo Dep. at 39; Dkt. 50, Exh. K). O'Neal, who replaced Emch, had prior experience as a welder, landscaper, and driver. (Dkt. 50, Exh. L). Longo testified that he hired O'Neal over Plaintiff based on:

> His involvement with the community, the fact that he had been born and raised here, still lived here in Auburndale, was well familiar with the city, involved with -- through his own children with the schools and so forth in different programs, the way he presented himself were all of the things that I felt were appropriate for the position. (Longo Dep. at 37).[4]

---

[4] Longo testified that he did not recall asking Plaintiff about his family, residence in the city, or community activities. (Longo Dep. at 38). Plaintiff, on the other hand, testified that Longo asked him where his parents were from and what they did. (Pl. Aff. ¶ 10). Plaintiff told him that they were migrant farm-workers and were currently

9

Based on this record, it does not appear that Plaintiff's qualifications are such that "no reasonable person, in the exercise of impartial judgment" could have selected Emch and O'Neal over Plaintiff. Accepting Plaintiff's contention that he was not aggressive, forceful, or confrontational during his interview would nonetheless place the applicants' personalities on, at best, even footing. While Plaintiff emphasizes his prior law enforcement experience and computer training, the only "essential and important element" listed in the PSA Job Description and the Recruitment Bulletin was the applicant's attitude and personality characteristics. (Longo Aff., Exh. B). Plaintiff thus cannot demonstrate pretext based on a disparity in job qualifications alone.

Plaintiff has, however, presented additional evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, [and] contradictions" in Defendant's sole reason for not selecting Plaintiff. *See Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir.2001). Specifically, Plaintiff argues that (1) Defendant gave inconsistent reasons for its decision not to hire Plaintiff in proceedings before the Equal Employment Opportunity Commission; (2) Defendant failed to afford Plaintiff the requisite preference as an existing City employee under the Defendant's Promotion Policy and Procedures; (3) Defendant failed to give Plaintiff preference for his prior law enforcement experience as stated in the PSA Job Description; (4) Longo was unable to substantiate his determination that Plaintiff was aggressive with any specific objective facts; and (5) the vast majority of the employees in the Police Department were white. These arguments are addressed in turn.

First, Plaintiff argues that Defendant gave inconsistent reasons for not selecting Plaintiff before the EEOC. Specifically, Plaintiff notes that in a March 13, 2006 letter to the EEOC,

---

disabled and not working. (*Id.*) The Court notes that this line of questioning could, in certain cases, be synonymous with protected characteristics of race or national origin and therefore could be indicative of a discriminatory animus.

Defendant's counsel stated:

> Although Mr. Anglin had prior law enforcement experience as a Military Policeman in the Navy and as a Corporation [*sic*], he did not have the type of experience called for in the position. At the time of his interview with the Chief of Police, the Chief recognized Mr. Anglin as being an individual who, in a restaurant, was extremely derogatory toward the City of Auburndale.[5]
>
> . . . .
>
> His record of traffic infractions, his personality, his observed demeanor in the City, and his intense (aggressive) attitude led the Chief of Police to select the other individuals. (Dkt. 50, Exh. C).

Plaintiff then notes that in an undated, unsworn affidavit to the EEOC, Longo stated that Plaintiff had several citations in his driving history[6] and had worked as security guard in the military and as a physical education coach in a juvenile correctional facility. (Dkt. 50, Exh. D). Longo also stated that:

> I was not looking for someone that had a preconceived notion about the position, rather someone that could be trained to perform the duties in a manner beneficial to the community and department. It was my opinion that the individual selected demonstrated a less intense type of personality, was more relaxed and personable, had no law enforcement agenda and would therefore be better suited in this role. (Dkt. 50, Exh. D).

Contrary to Plaintiff's assertions, in both communications to the EEOC, Defendant specifically cites Plaintiff's personality as being a factor in the decision. This continues to be Defendant's stated reason for Plaintiff's non-selection, and the Court does not find the minor variations in Defendant's statements to be indicative of a discriminatory animus.

---

[5] Although not argued by Plaintiff, it appears from the record that Longo made the observation in the restaurant after Emch was hired, but before O'Neal was hired, and that Plaintiff was expressing anger over not being selected for the PSA position. (Longo Dep. at 36, 42). This observation therefore could not have been a legitimate basis for Emch's selection, but would have been relevant for O'Neal's selection.

[6] Plaintiff argues that to the extent Longo relied on his driving record, this reason was pretextual, as O'Neal had been given a Written Warning & Counselling (*sic*) Report" for a damage to motor vehicle. (Dkt. 50, Exh. M). This Court rejects this argument, however, as the warning was issued on March 10, 2006, well after O'Neal was hired.

Second, Plaintiff argues that Defendant did not comply with its published selection and promotion criteria. It is well-established that "[a]n employer's violation of its own normal hiring procedure may be evidence of pretext," especially when "an employer disregards all but one of the factors and qualifications generally taken into consideration and relies solely on a factor which was designed to create 'leeway' for the promotion of people of a certain race." *Bass v. Board of County Com'rs, Orange County*, 256 F.3d 1095, 1108 (11th Cir. 2001) (finding evidence of pretext where interviewers relied exclusively on interviews, in direct contravention of stated policy).

Defendant's "Promotion Policy and Procedures" specified with respect to promotions that "city employees shall receive preference when applying for vacant positions." (Dkt. 50, Exh. N). Defendant has not disputed that the PSA position would have constituted a "promotion"[7] for Plaintiff and that Plaintiff, as a current City employee, should have been given preference over Emch and O'Neal for this reason. The Court therefore finds Defendant's unexplained failure to comply with this provision to be probative of pretext.

In addition, the PSA "Job Description" stated that "[p]reference *may* be given to applicants that have prior law enforcement experience or who have completed basic police standards training." (Longo Aff., Exh. B at 2) (emphasis added). Given that Longo assisted in preparing the Job Description, Defendant has failed to explain Longo's apparent shift in position from stating a possible preference for applicants with law enforcement experience to testifying that "if you are asking if someone had a background in or prior experience in law enforcement, would that have given them a leg up, no, in this situation, it wouldn't have, because I wasn't looking for a law

---

[7] The Policy provides that "An employee is promoted when he/she is selected for a higher level position with the City." (Dkt. 50, Exh. N).

enforcement person." (Longo Dep. at 25). Although the PSA Job Description expressed only a possible preference for law enforcement experience, Longo's change in position is arguably inconsistent and therefore probative of pretext.[8]

Third, while Longo's reliance on the applicants' personalities is a permissible qualification -- and one that was expressly stated in the PSA Job Description -- it is undercut here by Longo's inability to explain an objective basis for his determination that Plaintiff was "aggressive." Although Longo was questioned at length in his deposition about his basis for determining that Plaintiff was aggressive, he was unable to give any objective examples, such as Plaintiff's tone of voice, bearing, facial expressions, body language, or specific comments. (Longo Dep. at 29-33). *See Chapman*, 229 F.3d at 1033 (noting that "[a]ttitude, articulateness, and enthusiasm, as well as appearance, can be vitally important" and "[b]ody language, tone of voice, eye contact, facial expressions and other non-verbal cues significantly affect the impression an applicant makes on the interviewer"). Longo instead testified in relevant part:

> Q: Was there anything about Mr. Anglin's personality that was negative that you learned of and that you considered?
> . . .
> A: From my own observations, I had a sense that Mr. Anglin was somewhat on the aggressive side. That was how he presented himself.
> Q: And can you give us any examples?
> A. No. I cannot cite you a specific -- well, through communication, listening to him express himself. Yeah.
> . . .
> Q. Was there anything negative about Mr. Anglin's communication skills that you knew of or that you considered?
> . . .
> A. No. I'm not saying there was a negative there. It wasn't how he communicated, it was more in what he communicated.

---

[8] A fact-finder, of course, may ultimately find this reason worthy of credence, as Longo averred that he rejected a white female applicant for this same reason. (Longo Aff. ¶ 9; Longo Dep. at 43).

13

. . .
Q: Did you make an assessment about how Mr. Anglin would get along with the public or customers or general people?
A. I made that assessment, based on my own observations, that I felt that the potential for confrontation contact with the public would have been a factor.
Q: But why?
A. Just based on Mr. Anglin's demeanor, his communication being somewhat aggressive.
Q: And can you recall anything aggressive that he did during the interview?
A. Aggressive in terms of actions?
Q. Right.
A. No.
Q. Okay. You made that judgment how, based on what?
A. Based on my own observations of Mr. Anglin.
(Longo Dep. at 29-32).

The lack of an objective basis for Defendant's *only* articulated reason for not hiring Plaintiff demonstrates a "weakness" in Defendant's stated reason. *See Silvera*, 244 F.3d at 1258. This deficiency is amplified by other facts already discussed: Defendant's unexplained failure to afford Plaintiff the requisite preference under Defendant's Promotion Policy and Procedures, and Defendant's failure to account for Longo's change in position on the relevance of law enforcement experience -- which Plaintiff had and Emch and O'Neal did not.[9] In short, this evidence produces a reasonable inference that: (1) there were other qualifying factors advantageous to Plaintiff that should have been considered pursuant to Defendant's own policies, but were not; and (2) Defendant instead relied solely on a subjective qualification that it has not substantiated with any objective facts.

Although this is a close case, the Court finds that Plaintiff has produced minimally sufficient

---

[9] Although Plaintiff has not asserted a pattern and practice claim, the Court also notes that only one of the forty-four employees in the Police Department was black. (Longo Dep. at 6, 20). *See, e.g., Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1019 (11th Cir. 2001) (noting at the outset of analysis that only one of defendant's 107 maintenance mechanics was black).

evidence of inconsistencies and weaknesses in Defendant's stated reason for not hiring Plaintiff to create a jury question as to whether this reason was "unworthy of credence." *Silvera,* 244 F.3d at 1258. Defendant's motion for summary judgment on the disparate treatment claims (Counts I and II) is therefore DENIED.

### *B. Retaliation*

As noted, Plaintiff has stipulated to the entry of summary judgment on his claims for retaliation (Counts III and IV). (Dkt. 50 at 1). Summary judgment is therefore GRANTED in favor of Defendant on these claims.[10]

### *Conclusion*

Based on the foregoing, the Court finds that Defendant is entitled to summary judgment on all claims. Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Dispositive Motion for Summary Judgment (Dkt. 42) is **GRANTED IN PART** as unopposed as to Counts III and IV and **DENIED IN PART** as to Counts I and II.

**DONE AND ORDERED** in chambers this 30th day of January, 2009.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to:
Counsel of Record

---

[10] Although Plaintiff asserts that he was constructively discharged (Dkt. 50 at 1-2), he has not pled such a claim in the Second Amended Complaint.